[No. S131798. July 24, 2006.]

CALIFORNIANS FOR DISABILITY RIGHTS, Plaintiff and Appellant, v. MERVYN'S, LLC, Defendant and Respondent.

224

## COUNSEL

Rosen, Bien & Asaro, Andrea G. Asaro, Holly M. Baldwin; Zelle, Hofmann, Voelbel, Mason & Gette, Daniel S. Mason; Disability Rights Advocates, Sidney Wolinsky, Monica Goracke, Laurence W. Paradis; The Sturdevant Law Firm, James C. Sturdevant and Monique Olivier for Plaintiff and Appellant.

Robinson, Calcagnie & Robinson, Sharon J. Arkin; Arias, Ozzello & Gignac and H. Scott Leviant for Consumer Attorneys of California, Janice Duran and Julia Ramos as Amici Curiae on behalf of Plaintiff and Appellant.

Lexington Law Group, Mark N. Todzo, Eric S. Somers and Lynne R. Saxton for California League for Environmental Enforcement Now as Amicus Curiae on behalf of Plaintiff and Appellant.

Bramson, Plutzik, Mahler & Birkhaeuser, Robert M. Bramson; and Leslie A. Brueckner for National Association of Consumer Advocates and Trial Lawyers for Public Justice as Amici Curiae on behalf of Plaintiff and Appellant.

Law Office of Richard R. Wiebe and Richard R. Wiebe for Center for Biological Diversity, Inc., Environmental Protection Information Center and Electronic Frontier Foundation as Amici Curiae on behalf of Plaintiff and Appellant.

Thomas Osborne, Michael Schuster and Barbara Jones for AARP as Amicus Curiae on behalf of Plaintiff and Appellant.

Morrison & Foerster, David F. McDowell, John Sobieski, Linda E. Shostak and Gloria Y. Lee for Defendant and Respondent.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, David N. Makous, Eric J. Erickson and Leo Bautista for ReadyLink HealthCare, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Respondent.

Munger, Tolles & Olson, Ronald L. Olson, Steven B. Weisburd and Dean N. Kawamoto for the California Chamber of Commerce, the California Bankers Association, the California Financial Services Association, the California Manufacturers & Technology Association and the California Motor Car Dealers Association as Amici Curiae on behalf of Defendant and Respondent.

Sonnenschein Nath & Rosenthal, Paul E. B. Glad, Thomas E. McDonald and Jennifer A. Bushoft for Association of California Insurance Companies and American Insurance Association as Amici Curiae on behalf of Defendant and Respondent.

Paul J. Beard III for Pacific Legal Foundation and Central California Citizens Against Lawsuit Abuse as Amici Curiae on behalf of Defendant and Respondent.

Heller Ehrman, Vanessa Wells, Warrington S. Parker III and Daniel K. Slaughter for State Farm Mutual Automobile Insurance Company, The Hertz Corporation and Visa U.S.A. Inc., as Amici Curiae on behalf of Defendant and Respondent.

Gibson, Dunn & Crutcher, Gail E. Lees, Kirk A. Patrick, G. Charles Nierlich and Christopher Chorba for Express Scripts, Inc., National Prescription

Administrators, Inc., Aetna Health of California Inc., and Aetna Life Insurance Company as Amici Curiae on behalf of Defendant and Respondent.

Law Offices of Neal T. Wiener and Neal T. Wiener for Jarrow Formulas, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**WERDEGAR, J.**—California law previously authorized any person acting for the general public to sue for relief from unfair competition. (Bus. & Prof. Code,[1] former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198 (former section 17204); see also *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 561 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; cf. *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660].) After Proposition 64, which the voters approved at the November 2, 2004, General Election, a private person has standing to sue only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." (§ 17204, as amended by Prop. 64, § 3; see also § 17203, as amended by Prop. 64, § 2.) This case requires us to decide whether the amended standing provisions apply to cases already pending when Proposition 64 took effect. We hold the new provisions do apply to pending cases.

### I. BACKGROUND

Plaintiff Californians for Disability Rights (CDR), a nonprofit corporation, sued defendant Mervyn's, LLC (Mervyn's), a corporation that owns and operates department stores, for alleged violations of the unfair competition law. (§ 17200 et seq.) CDR alleged that pathways between fixtures and shelves in Mervyn's stores were too close to permit access by persons who use mobility aids such as wheelchairs, scooters, crutches and walkers. CDR did not claim to have suffered any harm as a result of Mervyn's conduct. Instead, CDR purported to sue on behalf of the general public under former section 17204. As relief, CDR sought an order declaring Mervyn's practices to be unlawful, an injunction barring those practices and requiring remedial action, CDR's costs and expenses of suit, and attorneys' fees. Following a bench trial, the superior court entered judgment for Mervyn's. CDR appealed.

On November 3, 2004, while the appeal was pending, Proposition 64 took effect, having been approved by the voters the preceding day. (See Cal. Const., art. II, § 10, subd. (a).) Mervyn's moved to dismiss the appeal, arguing the

---

[1] All further statutory citations are to the Business and Professions Code, except as noted.

measure eliminated CDR's standing to prosecute the action. The Court of Appeal denied the motion, holding that Proposition 64's standing provisions did not apply to cases pending when the measure took effect. We granted Mervyn's petition for review.

## II. Discussion

As mentioned, California's statutory unfair competition law (§ 17200 et seq.) (hereafter the UCL) previously authorized "any person acting for the interests of itself, its members or the general public" (former § 17204) to file a civil action for relief. Standing to bring such an action did not depend on a showing of injury or damage. (See *Committee on Children's Television, Inc. v. General Foods Corp.*, *supra*, 35 Cal.3d 197, 211; cf. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, *supra*, 17 Cal.4th 553, 561.)

In Proposition 64, as stated in the measure's preamble, the voters found and declared that the UCL's broad grant of standing had encouraged "[f]rivolous unfair competition lawsuits [that] clog our courts[,] cost taxpayers" and "threaten[] the survival of small businesses . . . ." (Prop. 64, § 1, subd. (c) ["Findings and Declarations of Purpose"].) The former law, the voters determined, had been "misused by some private attorneys who" "[f]ile frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit," "[f]ile lawsuits where no client has been injured in fact," "[f]ile lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant," and "[f]ile lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision." (Prop. 64, § 1, subd. (b)(1)–(4).) "[T]he intent of California voters in enacting" Proposition 64 was to limit such abuses by "prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact" (*id.*, § 1, subd. (e)) and by providing "that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public" (*id.*, § 1, subd. (f)).

Proposition 64 accomplishes its goals in relatively few words. The measure amends section 17204, which prescribes who may sue to enforce the UCL, by deleting the language that had formerly authorized suits by any person "acting for the interests of itself, its members or the general public," and by replacing it with the phrase, "who has suffered injury in fact and has lost money or property as a result of such unfair competition." The measure also amends section 17203, which authorizes courts to enjoin unfair competition, by adding the following words: "Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing

requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state." (§ 17203.)[2]

Proposition 64 does not expressly declare whether the new standing provisions it adds to the UCL apply to pending cases. Mervyn's argument that the measure does so declare is unconvincing. According to Mervyn's, the electorate expressed its understanding that the new standing provisions apply to pending cases by stating in section 17204 that suits under the unfair competition laws "shall be *prosecuted* exclusively" (italics added) by the persons therein given standing. Mervyn's argues the word "prosecuted" is broad enough to describe the continued prosecution of actions filed before the measure took effect. (Cf. *Melancon v. Superior Court* (1954) 42 Cal.2d 698, 707–708 [268 P.2d 1050] [describing the term "prosecution" in a different context as " 'sufficiently comprehensive to include every step in an action from its commencement to its final determination' "].) Mervyn's would find similar indications of the voters' intent in the measure's preamble, which declares that "the intent of California voters" was "to *eliminate* frivolous unfair competition lawsuits" (Prop. 64, § 1, subd. (d), italics added) and to ensure "that only the California Attorney General and local public officials be authorized to file and *prosecute* actions on behalf of the general public" (*id.*, § 1, subd. (f), italics added). Mervyn's also relies on the ballot argument favoring the measure, which urged the voters to "[c]*lose the frivolous shakedown lawsuit loophole.*" (Voter Information Guide, Gen. Elec. (Nov. 2, 2004), argument in favor of Prop. 64, p. 40.)

 Certainly the foregoing statements would be consistent with an assumed intention to apply Proposition 64's standing provisions to pending cases. The language is not, however, sufficiently clear to compel the inference that the voters did intend the provisions so to apply. The UCL's reference to the "prosecution" of actions appears in a part of section 17204 that Proposition 64 did not change. Moreover, at least in modern times, we have been cautious not to infer the voters' or the Legislature's intent on the subject of prospective versus retrospective operation from "vague phrases" (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 843 [123 Cal.Rptr.2d 40, 50 P.3d 751] (*Myers*)) and "broad, general language" (*Evangelatos v.*

---

[2] Proposition 64 also makes changes that do not affect this case. Specifically, the measure provides that any civil penalties imposed under the UCL, which now as before are recoverable only in actions brought by public officials (§ 17206, subd. (a)), are "for the exclusive use by the Attorney General, the district attorney, the county counsel, and the city attorney for the enforcement of consumer protection laws" (§ 17206, subd. (c), as amended by Prop. 64, § 4; see also § 17206, subd. (e)). Proposition 64 also makes identical changes to the false advertising law (§ 17500 et seq.) concerning standing to sue and the use of penalties. (See §§ 17535, 17536, subd. (c), as amended by Prop. 64, §§ 5, 6.)

*Superior Court* (1988) 44 Cal.3d 1188, 1209, fn. 13 [246 Cal.Rptr. 629, 753 P.2d 585] (*Evangelatos*)) in statutes, initiative measures and ballot pamphlets. We have also disapproved statements to the contrary in certain older cases. (See *Evangelatos*, at pp. 1208–1209, disapproving language in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371], *Mannheim v. Superior Court* (1970) 3 Cal.3d 678, 686–687 [91 Cal.Rptr. 585, 478 P.2d 17], and *In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].) Accordingly, we will not attempt to infer from the ambiguous general language of Proposition 64 whether the voters intended the measure to apply to pending cases. Instead, we will employ the ordinary presumptions and rules of statutory construction commonly used to decide such matters when a statute is silent.

CDR, arguing the new standing provisions do not apply to pending cases, relies on the "well-established presumption that statutes apply prospectively in the absence of a clearly expressed contrary intent . . . ." (*Evangelatos, supra*, 44 Cal.3d 1188, 1218; see also *Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159] (*Aetna Casualty*).) In response, and assuming for the sake of argument the cited presumption governs this case, Mervyn's contends the application of Proposition 64's standing provisions to pending cases is not "retroactive," as we have defined the term, because such application does not change the legal consequences of past conduct by imposing new or different liabilities based upon such conduct. (See *Elsner v. Uveges* (2004) 34 Cal.4th 915, 937 [22 Cal.Rptr.3d 530, 102 P.3d 915] (*Elsner*); *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 291 [279 Cal.Rptr. 592, 807 P.2d 434] (*Tapia*); cf. *Aetna Casualty, supra*, at pp. 394–395.)

When a statute's application to a given case is challenged as impermissibly retroactive, we typically begin our analysis by reiterating the presumption that statutes operate prospectively absent a clear indication the voters or the Legislature intended otherwise. (E.g., *Elsner, supra*, 34 Cal.4th 915, 936; *Myers, supra*, 28 Cal.4th 828, 840; *Tapia, supra*, 53 Cal.3d 282, 287; *Evangelatos, supra*, 44 Cal.3d 1188, 1207; *Aetna Casualty, supra*, 30 Cal.2d 388, 393.) The presumption embodies " ' "[t]he first rule of construction[, namely,] that legislation must be considered as addressed to the future, not to the past." ' " (*Evangelatos*, at p. 1207, italics omitted, quoting *United States v. Security Industrial Bank* (1982) 459 U.S. 70, 79 [74 L.Ed.2d 235, 103 S.Ct. 407]; see also *Myers*, at p. 840.)

Having articulated the presumption, "[t]here remains the question of what the terms 'prospective' and 'retroactive' mean." (*Tapia, supra*, 53 Cal.3d 282, 288.) We recently reviewed this subject in *Elsner, supra*, 34 Cal.4th 915: "In deciding whether the application of a law is prospective or retroactive, we

look to function, not form. (*Tapia, supra*, 53 Cal.3d at p. 289; *Aetna Casualty, supra*, 30 Cal.2d at p. 394.) We consider the effect of a law on a party's rights and liabilities, not whether a procedural or substantive label best applies. Does the law 'change[] the legal consequences of past conduct by imposing new or different liabilities based upon such conduct[?]' (*Tapia*, at p. 291.) Does it 'substantially affect[] existing rights and obligations[?]' (*Aetna Casualty*, at p. 395.) If so, then application to a trial of preenactment conduct is forbidden, absent an express legislative intent to permit such retroactive application. If not, then application to a trial of preenactment conduct is permitted, because the application is prospective." (*Elsner*, at pp. 936–937.) Viewed functionally, a statute that establishes rules for the conduct of pending litigation without changing the legal consequences of past conduct " ' "is not made retroactive merely because it draws upon facts existing prior to its enactment . . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future." [Citations.] For this reason, we have said that "it is a misnomer to designate [such statutes] as having retrospective effect." ' " (*Elsner*, at p. 936, quoting *Tapia*, at p. 288.)

Applying these rules in illustrative cases, we have found to be *retroactive*, and thus impermissible, the application of new statutes to pending cases in ways that would have: (a) expanded contractors' tort liability for past conduct by imposing broader duties than existed under the common law (*Elsner, supra*, 34 Cal.4th 915, 937–938); (b) subjected tobacco sellers to tort liability for acts performed at a time when they enjoyed the protection of an immunity statute (*Myers, supra*, 28 Cal.4th 828, 840); and (c) subjected persons to increased punishment for past criminal conduct, or to punishment for past conduct not formerly defined as criminal (*Tapia, supra*, 53 Cal.3d 282, 297–299). In each of these cases, application of the new law to pending cases would improperly have changed the legal consequences of past conduct by imposing new or different liabilities based upon such conduct. (See *Elsner*, at p. 937.)

In contrast, courts have found to be *prospective*, and thus permissible, the application to pending cases of new statutes: (a) requiring plaintiffs suing under an environmental law to provide a certificate of merit (*In re Vaccine Cases* (2005) 134 Cal.App.4th 438, 454–456 [36 Cal.Rptr.3d 80]); (b) eliminating the right under the anti-SLAPP law (Code Civ. Proc., §§ 425.16, 425.17) to dismiss certain public-interest lawsuits (*Brenton v. Metabolife Internat., Inc.* (2004) 116 Cal.App.4th 679, 688–691 [10 Cal.Rptr.3d 702]); and (c) eliminating the right to appeal (as distinguished from the right to file a petition for writ of mandate) from a superior court's decision upholding the Medical Board of California's decision to revoke a physician's license (*Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 213–216 [97 Cal.Rptr.2d 657]). In each of these cases, application of the new law to

pending cases properly governed the conduct of proceedings following the law's enactment without changing the legal consequences of past conduct. (See *Elsner*, *supra*, 34 Cal.4th 915, 937.)

■ To apply Proposition 64's standing provisions to the case before us is not to apply them "retroactively," as we have defined that term, because the measure does not change the legal consequences of past conduct by imposing new or different liabilities based on such conduct.[3] (See *Elsner*, *supra*, 34 Cal.4th 915, 937.) The measure left entirely unchanged the substantive rules governing business and competitive conduct. Nothing a business might lawfully do before Proposition 64 is unlawful now, and nothing earlier forbidden is now permitted. Nor does the measure eliminate any right to recover. Now, as before, no one may recover damages under the UCL (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545]), and now, as before, a private person may recover restitution only of those profits that the defendant has unfairly obtained from such person or in which such person has an ownership interest (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144–1150 [131 Cal.Rptr.2d 29, 63 P.3d 937]).

■ Proposition 64 does prevent *uninjured* private persons from suing for restitution on behalf of others. This is a consequence of section 17203 (as amended by Prop. 64, § 2), which provides that "[a]ny person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure . . . ."[4] In effect, section 17203, as amended, withdraws the standing of persons who have not been harmed to represent those who have. But the section need not for that reason be described as operating retroactively. For a lawsuit properly to be allowed to continue,

---

[3] Given this conclusion, we need not reach Mervyn's additional argument that Proposition 64 applies to pending cases under the statutory repeal rule, i.e., the rule "that an action wholly dependent on statute abates if the statute is repealed without a saving clause before the judgment is final." (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 109 [145 Cal.Rptr. 674, 577 P.2d 1014].)

[4] Code of Civil Procedure section 382 provides: "If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." We have held that "[s]ection 382 . . . authorizes class suits in California . . . . The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members." (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913 [103 Cal.Rptr.2d 320, 15 P.3d 1071].) Section 382 has also been interpreted as permitting associations to sue on behalf of their members. (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 793 [171 Cal.Rptr. 334].)

standing must exist at all times until judgment is entered and not just on the date the complaint is filed. "[C]ontentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438 [261 Cal.Rptr. 574, 777 P.2d 610]; see also *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361 [87 Cal.Rptr.2d 654, 981 P.2d 499]; *McKinny v. Board of Trustees* (1982) 31 Cal.3d 79, 90 [181 Cal.Rptr. 549, 642 P.2d 460].)

■ CDR argues that to apply Proposition 64's standing rules to pending cases "would significantly impair the settled rights and expectations of the parties to continue prosecution of their actions." But the only rights and expectations Proposition 64 impairs hardly bear comparison with the important right the presumption of prospective operation is classically intended to protect, namely, the right to have liability-creating conduct evaluated under the liability rules in effect at the time the conduct occurred. (See *Elsner, supra,* 34 Cal.4th 915, 936–937; *Myers, supra,* 28 Cal.4th 828, 839; *Aetna Casualty, supra,* 30 Cal.2d 388, 393–395.) Proposition 64 may, as applied to cases in which uninjured persons have volunteered to act as private attorneys general, defeat such persons' hope of recovering attorneys' fees under Code of Civil Procedure section 1021.5. But CDR does not argue that their hope of recovering fees has any relevance to the issue before us. In any event, section 1021.5 confers no *right* to fees until a plaintiff has, among other things, been "successful . . . in [an] action which has resulted in the enforcement of an important right affecting the public interest," conferred "a significant benefit . . . on the general public or a large class of persons," and persuaded a court to exercise its discretion to award fees. Proposition 64 might also be viewed as defeating CDR's civic or philosophical interest in enforcing the UCL as an uninjured, volunteer plaintiff. But CDR has cited no case applying the presumption of prospective operation to protect an interest so abstract. Given that the interest in suing on another's behalf is not a property right beyond statutory control (see *Hogan v. Ingold* (1952) 38 Cal.2d 802, 809 [243 P.2d 1] [shareholder's derivative action]), to deny full effect to an initiative measure in which the voters have chosen their own legal representatives for cases brought ostensibly on their behalf cannot be defended as a plausible interpretation of the measure.[5]

---

[5] Proposition 64's standing provisions also apply to this case for the additional reason that CDR seeks only injunctive relief. As we recently explained, "it is clear under a long and uniform line of California precedents that the validity of [a] judgment [concerning injunctive relief] must be determined on the basis of the current statutory provisions, rather than on the basis of the statutory provisions that were in effect at the time the injunctive order was entered. . . . 'Because relief by injunction operates in the future, appeals of injunctions are governed by the law in effect at the time the appellate court gives its decision.' [Citations.]" (*Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 23 [30 Cal.Rptr.3d 30,

### III. DISPOSITION

The judgment of the Court of Appeal is reversed and the case remanded for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

Appellant's petition for a rehearing was denied August 30, 2006.

---

113 P.3d 1062]; see also *Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 837 [31 Cal.Rptr.3d 565, 115 P.3d 1212]; *Tulare Dist. v. Lindsay-Strathmore Dist.* (1935) 3 Cal.2d 489, 527–528 [45 P.2d 972].)